**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal Action No.: 25-00021 (RC) |
| | : | |
| JOSEPH KNIGHT, | : | Re Document No.: 14 |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**DENYING DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER**

**I.  INTRODUCTION**

Defendant Joseph Knight was indicted on four counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); two counts of assault while armed, in violation of 22 D.C. Code §§ 404.01, 4502; and two counts of possessing a firearm during a crime of violence, in violation of 22 D.C. Code § 4504(b).  In his initial appearance before Magistrate Judge Matthew J. Sharbaugh, Mr. Knight conceded to pretrial detention.  Min. Entry, Dec. 3, 2024.  Mr. Knight now moves for the Court to revoke the order of pretrial detention.  Mot. Rev. & Revocation Ord. Det. ("Def.'s Mot."), ECF No. 14.  The Government opposes Mr. Knight's release.  Gov't's Mem. Supp. Pretrial Det. ("Gov't Mem."), ECF No. 15.  For the reasons set out below, the Court finds by clear and convincing evidence that Mr. Knight's release pending trial would pose a danger to other persons and the community.  The Court therefore denies Mr. Knight's motion.

**II.  FACTUAL BACKGROUND**

This case concerns two separate shooting incidents.  On September 18, 2024, Metropolitan Police Department ("MPD") officers responded to a call that ShotSpotter had detected seven gunshots on Marion Barry Avenue in Southeast Washington, D.C., near

Anacostia Library. Gov't Mem. at 1, 6. Upon arrival, MPD officers found Complaining Witness 1 ("CW-1") suffering from multiple gunshot wounds to her leg and recovered seven shell casings. *Id.* at 7. MPD subsequently obtained CCTV footage that showed that at the time ShotSpotter had detected the seven gunshots, an individual later identified as Joseph Knight was seen walking with CW-1 along Marion Barry Avenue. *Id.* at 4–5. Following the shooting incident, Mr. Knight reappeared on CCTV, beginning to run on Marion Barry Avenue. *Id.* at 6. Two days later, MPD interviewed CW-1 in the hospital where she described the appearance of the person who shot her. *Id.* at 10. And one week after the shooting, MPD was notified by an Anacostia Library officer that Mr. Knight was at Anacostia Library. *Id.* at 10–11. MPD responded and attempted to speak with Mr. Knight, but Mr. Knight refused, fled, and discarded a satchel containing a loaded firearm. *Id.* The firearm was recovered, processed, and traced back to the September 18, 2024 shooting. *Id.* at 12. In a second interview, CW-1 confirmed that the individual appearing in the CCTV footage was the person who shot her with a confidence level of 10 out of 10. *Id.* at 12–13.

On November 11, 2024, MPD responded to a call from Complaining Witness 2 ("CW-2") reporting that her boyfriend shot her. *Id.* at 13–14. Upon arrival, law enforcement found CW-2 with gunshot wounds and recovered six spent shell casings in front of 2020 19th Place Street Southeast, near Anacostia Library. *Id.* at 15. CW-2 was treated for three gunshot wounds and eventually identified her shooter as Mr. Knight, after refusing to cooperate the night of the shooting. *Id.* at 17. She explained to MPD that after she told Mr. Knight he could no longer stay with her, they began to argue and he pulled out a firearm, which he used to strike her and then fire at her. *Id.* On November 15, 2024, MPD placed Mr. Knight under arrest for the September 18, 2024 and November 11, 2024 shootings. *Id.* at 18. During a search incident to

the arrest of Mr. Knight, MPD recovered a firearm from his waistband that was traced to the November 11, 2024 shooting.  *Id.* at 18–20.

A Grand Jury returned an indictment charging Mr. Knight with four counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); two counts of assault while armed, in violation of 22 D.C. Code §§ 404.01, 4502; and two counts of possessing a firearm during a crime of violence, in violation of 22 D.C. Code § 4504(b).  *See* Indictment, ECF No. 11.  At the initial appearance Mr. Knight waived his right to a detention hearing.  Gov't Mem. at 20.  However, on July 31, 2025, after changing representation, Mr. Knight moved this Court to revoke the order of detention previously entered.  *See* Def.'s Mot.  Thereafter, the Government submitted a memorandum in support of pretrial detention, opposing the Defendant's motion.  *See* Gov't Mem.

### III.  LEGAL STANDARD

Under the Bail Reform Act of 1984, a judge shall order the pretrial detention of a defendant if the judge finds that no conditions of release will reasonably assure either the safety of other persons and the community or the appearance of the defendant in court.  18 U.S.C. § 3142(e)(1).  A finding that no conditions will reasonably assure the safety of persons or the community must be made by clear and convincing evidence.  *Id.* § 3142(f).  The Bail Reform Act is silent as to the level of proof required for finding that no conditions will reasonably assure the appearance of a defendant in court, but the D.C. Circuit has held that the finding need only be made by a preponderance of the evidence.  *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987); *United States v. Vortis*, 785 F.2d 327, 328–29 (D.C. Cir. 1986) (per curiam).  In determining whether there are conditions of release that will assure the safety of other persons and the community, the Court must consider: (1) the nature and circumstances of the offense

charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the danger posed to any person or the community if the defendant is released.  18 U.S.C. § 3142(g).[1]

## IV.  ANALYSIS

The Government focuses its argument on the safety of other persons and the community if Mr. Knight is released.  Gov't Mem. at 1, 21.  Thus, the clear and convincing evidence standard applies to review of the § 3142(g) factors.  18 U.S.C. § 3142(f).  The Court finds that the Government has shown by clear and convincing evidence that no condition of release or combination of conditions will reasonably assure the safety of any other person or the community if Mr. Knight is released pending trial.

### A.  Nature of the Offense

In evaluating the "nature and circumstances of the offense charged," the Court may consider the seriousness of the offense charged and whether the alleged crime involves violence or a firearm.  *Id.* § 3142(g)(1); *see United States v. Hassanshahi*, 989 F. Supp. 2d 110, 114 (D.D.C. 2013).  This factor weighs heavily against Mr. Knight because the indictment demonstrates probable cause to believe that Mr. Knight possessed loaded firearms that were used to commit acts of violence in violation of 18 U.S.C. § 922(g), 22 D.C. Code §§ 404.01, 4502, and 22 D.C. Code § 4504(b).  A violation of § 922(g), for instance, is a serious offense carrying a possible sentence of up to ten years imprisonment.  18 U.S.C. § 924(a)(2).

Demonstrating the violent nature of the offenses charged, the Government provided evidence that within the span of two months, Mr. Knight separately shot two individuals,

---

[1] Section 3142(e) provides circumstances where a rebuttable presumption arises that no conditions could reasonably assure the safety of any person or community.  No such rebuttable presumption exists here.  *See* 18 U.S.C. § 3142(e)(2)–(3).

including an intimate partner, with two different loaded firearms in his possession.  On the first occasion, CCTV footage shows Mr. Knight running away from an area where MPD's ShotSpotter detected seven gunshots.  Gov't Mem. at 5–6.  MPD responded to the area and found CW-1 suffering from multiple gunshot wounds to her legs.  *Id.* at 7.  A week later, when Mr. Knight was approached by an MPD Officer, Mr. Knight fled and discarded a satchel containing a loaded firearm that traced back to the shooting of CW-1.  *Id.* at 11–12.  CW-1 later identified Mr. Knight as the person who shot her in a photo array with a confidence level of 10 out of 10.  *Id.* at 13.

In the second incident, MPD responded to a call from CW-2 who was shot three times and identified the shooter as her boyfriend, Mr. Knight.  *Id.* at 13–17.  Days later, Mr. Knight was arrested and MPD recovered a firearm from Mr. Knight which was traced to the shooting of CW-2.  *Id.* at 18–20.  The Court finds that the two separate shootings, recovered firearms, and positive identifications of Mr. Knight by CW-1 and CW-2 are clear indicia of his involvement in multiple violent encounters with loaded firearms.  Consequently, this factor weighs against Mr. Knight's release.

### B.  Weight of the Evidence

The evidence weighs against Mr. Knight.  Both CW-1 and CW-2 have identified Mr. Knight as their assailant.  *See* Gov't Mem. at 13, 17.  In the first incident, CCTV footage of the events leading to the shooting, *id.* at 5–6, the recovered ammunition, *id.* at 7, and the recovered firearm, *id.* at 11–12, suggest that Mr. Knight perpetrated the violent assault.  Similarly, the firearm recovered from Mr. Knight upon his arrest traces back to the second incident.  *Id.* at 20.  Although Mr. Knight claims that there are significant credibility issues with both complainants,

5

*see* Def.'s Mot. at 5, there is nothing in the record to support this assertion. Taken together, this evidence is sufficiently strong to weigh in favor of continued detention.[2]

### C. Defendant's History and Characteristics

The third factor, the defendant's history and characteristics, also weighs in favor of continued pretrial detention. Under § 3142(g)(3), relevant considerations include "the [defendant's] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). When evaluating this third factor, this Court "emphasize[s] the defendant's criminal background." *Hassanshahi*, 999 F. Supp. 2d at 115; *see, e.g.*, *United States v. Richards*, 783 F. Supp. 2d 99, 103 (D.D.C. 2011).

The Court observes that these incidents occurred while Mr. Knight was under post-detention supervision for his prior robbery and illegal firearm convictions. Gov't Mem. at 24. Moreover, Mr. Knight concedes that he has "several prior convictions" including three prior convictions for illegal possession of a firearm. *Id.*; Def.'s Mot. at 6. Despite Mr. Knight's previous convictions and incarceration, the Government's evidence suggests that Mr. Knight possessed two loaded firearms and committed two violent assaults within months of his release from prison. Gov't Mem. at 24. When confronted by a police officer following the first alleged shooting, Mr. Knight discarded one firearm and proceeded to re-arm with another firearm which was used less than two months later in a second shooting. *Id.* This behavior and Mr. Knight's

---

[2] Because each of the four Section 3142(g) factors weigh against the Defendant here, the Court need not decide whether "the weight of evidence against the defendant" should be given the same weight as the other Section 3142(g) factors. *See* Def.'s Mot. at 5; Gov't Mem. at 23 n.2.

past criminal history weigh heavily against his release. Mr. Knight stresses the need for release in order to receive mental health services to address trauma and learning disabilities. Def.'s Mot. at 6. The Court finds that although Mr. Knight may require mental health treatment, there is no indication that such treatment was sought after his release from prison. Additionally, there is no information supporting the adequacy of Mr. Knight's suggested third-party custodian, Ms. Anderson, limiting the weight this bears in favor of Mr. Knight's release. *See id.* at 7. Instead, the Court finds that the commission of the charged offenses while on supervision from a prior conviction, combined with Mr. Knight's prior criminal history, substantially weighs in favor of continued detention.

### D.  Danger Posed by Defendant's Release

Turning to the fourth factor, the Government argues that possession of two loaded firearms used to commit two separate armed assaults while on supervised release from a previous felony conviction weighs in favor of Mr. Knight's detention to protect the community. Gov't Mem. at 25. The Court agrees. Possession of a firearm "poses an inherent risk of danger to the community," *United States v. Howard*, No. 20-cr-181, 2020 WL 5642288, at *3 (D.D.C. Sep. 21, 2020), and the Court is deeply concerned by Mr. Knight's possession of multiple firearms and involvement in violent assaults while on supervised release for another firearm offense, *see also United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that "carrying a loaded firearm—especially if the carrier has a violent history . . . has the great potential to escalate into violence"). Given Mr. Knight's poor record of compliance with supervision, and the weight of evidence suggesting Mr. Knight possessed two loaded firearms used in violent assaults, the Court is persuaded that Mr. Knight poses a danger to the community if released pending trial.

7

Accordingly, the Court concludes that the Government has demonstrated by clear and convincing evidence that the § 3142(g) factors weigh in favor of pretrial detention and that no conditions of release would reasonably assure the safety of the community.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Revocation of Detention Order (ECF No. 14) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 7, 2025                                                                     RUDOLPH CONTRERAS
                                                                                            United States District Judge